**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

LERONE LEWIS,

        Petitioner,

  v.

JASON KENT, Warden of Dixon
Correctional Institute,

        Respondent.

Case No. 3:20-cv-484-JWD-EWD

## REPLY

Respondent offers no defense on the merits in response to Mr. Lewis's claims that his rights under the Equal Protection Clause and the Double Jeopardy Clause were violated. *But see* Rules Governing Section 2254 Cases in the United States District Court, Rule 5(b) ("The answer *must* address the allegations in the motion. *In addition*, it must state whether any claim in the petition is barred by . . . a procedural bar.") (emphasis added). Respondent does not dispute that prosecutors were motivated by Juror No. 15's race when they used a peremptory strike, *but see* 28 U.S.C. § 243; nor does Respondent deny that Mr. Lewis's second trial ended (over his objection) with a mistrial declared without "manifest necessity," such that his third trial subjected him to double jeopardy. Instead, Respondent argues that the federal courts are powerless to grant relief on Mr. Lewis's federal claims because these claims were "procedurally defaulted" in the state courts. Dkt. 7, at 10. This argument fails for two reasons: (1) Mr. Lewis properly raised his federal claims at all levels in the state courts, and the state courts did not "clearly and expressly" base their rejection of Mr. Lewis's constitutional claims on a state procedural bar; and (2) assuming the state courts *did* invoke "state procedural bars," such rulings

1

do not constitute "adequate and independent" bases for stripping the federal courts of power to grant relief on the particular facts here.

Mr. Lewis's Confrontation Clause claim, Respondent concedes, is properly before this Court. Respondent does not deny that the District Attorney provided false information to the Fourth Circuit Court of Appeal concerning the Confrontation Clause claim; that the District Attorney knowingly and intentionally refused to correct these false factual representations before the court ruled; and that the Fourth Circuit Court of Appeal then erroneously relied on these false representations when denying Mr. Lewis's claim. *But see* 28 U.S.C. § 242. Nor does Respondent deny Mr. Lewis's contention that the state courts ignored the appropriate federal legal standards for assessing Confrontation Clause claims. *See* Dkt. 1, at 32.

This Court should promptly recommend that all three of Mr. Lewis's claims be granted.

## I.    The *Batson* Claim

The procedural default doctrine—a specific application of the general independent state grounds doctrine—provides that when a prisoner has defaulted a claim by violating a state procedural rule which would constitute adequate and independent grounds to bar direct review in the United States Supreme Court, he may not raise the claim in federal habeas. *Coleman v. Thompson*, 501 U.S. 722, 729–30 (1991). But in order to apply, the state court must have actually based its decision on the purported "state procedural bar" and it must have "'clearly and expressly' state[d] that its judgment rest[ed] on a state procedural bar." *Harris v. Reed*, 489 U.S. 255, 263 (1989). Even when this "plain statement" requirement is satisfied, a federal court may still grant habeas relief on the federal claim if the procedural bar does not "constitute[] an adequate and independent state ground for denying relief." *Id.* at 267. With respect to Mr. Lewis's *Batson* claim, the basis for the state court's denial is (at very best) muddled, and to the

extent the court did invoke a "state procedural bar," it is certainly not an "adequate" or "independent" one to preclude this Court from enforcing the Equal Protection rights of Mr. Lewis and the excluded juror.

### A. The state court did not "clearly and expressly" state that its judgment rested on a state procedural bar . . .

Candor requires an honest reiteration of what happened in the state court: the Fourth Circuit Court of Appeal simply failed to read the trial transcript (or, apparently, Mr. Lewis's briefs) and erroneously thought Mr. Lewis did not raise *any* objection to prosecutors' racially motivated peremptory strike. *See* Dkt. 1-14, at *4-5 ("Defendant points to no jurisprudence suggesting that alleged racial discrimination during the exercise of peremptory challenges . . . may be reviewed on appeal in the absence of a contemporaneous objection."). But Mr. Lewis did raise a *Batson* challenge, all parties now agree. (He did so twice, in fact, if we include Mr. Lewis's written post-trial motion that re-asserted the *Batson* claim. *See* R. 132.) And, so there is no confusion, the "*Batson* challenge" that Mr. Lewis raised is an *objection* under the Equal Protection Clause to the use of a peremptory strike in a racially discriminatory fashion. *See Batson v. Kentucky*, 476 U.S. 79, 99 (1986) ("[P]etitioner made a timely objection to the prosecutor's removal of all black persons on the venire."); *Flowers v. Mississippi*, 139 S. Ct. 2228, 2236 (2019) ("Flowers objected, arguing under *Batson* that . . ."); *Foster v. Chatman*, 136 S. Ct. 1737, 1743 ("Foster immediately lodged a *Batson* challenge. The trial court rejected the objection . . ."); *Snyder v. Louisiana*, 552 U.S. 472 (2008) ("We hold that the trial court committed clear error in its ruling on a *Batson* objection . . . .").

Respondent now advances a creative (or, less charitably, insincere) reading of the Fourth Circuit Court of Appeal's ruling, suggesting the opinion held: "Yes, Mr. Lewis timely raised a *Batson* challenge, and yes, he objected to the trial court's ruling again in a post-trial motion, but

he did not immediately orally *re-object* to the denial of his objection, and because Louisiana law requires such a 'super-objection' to an objection denial, the appellate courts will not address the merits of his Equal Protection claim." Not so. We know that Respondent's novel interpretation of the Fourth Circuit Court of Appeal's opinion is incorrect because: (1) that's not what the opinion says; (2) that's not what any of the cases cited in the opinion say[1]; (3) no *Batson* opinion in the history of Louisiana, or any other jurisdiction, has ever imposed such a "super-objection" requirement to preserve *Batson* claims (that counsel is aware of); (4) Louisiana law once required parties to take "exception" to adverse trial court rulings, but expressly abandoned that requirement long before *Batson* was decided[2]; and (5) Mr. Lewis actually *did* notify the court of his objection to the trial court's *Batson* ruling, in writing, in a post-trial motion, so the lack of an "exception" would actually be an unlikely basis for the Fourth Circuit Court of Appeal to deny relief on. If this explanation were remotely plausible, surely the District Attorney would have raised it when defending the Fourth Circuit Court of Appeal's opinion before the Louisiana Supreme Court (but, of course, the District Attorney did not). *See* Dkt. 1-19.

As this debate illustrates, the Fourth Circuit Court of Appeal's rationale for its denial of Mr. Lewis's *Batson* claim is (at best) unclear. Under such circumstances, it cannot be said that

---

[1]    Every single one of the cases cited by the Fourth Circuit Court of Appeal dealt with situations where a defendant fails to make any objection whatsoever to the alleged trial court irregularity. This is, to be clear, what the Fourth Circuit Court of Appeal evidently thought had happened.

[2]    *See* La. C. Cr. P. art. 841 ("An irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence. A bill of exceptions to rulings or orders is unnecessary. It is sufficient that a party, at the time the ruling or order of the court is made or sought, makes known to the court the action which he desires the court to take, or of his objections to the action of the court, and the grounds therefor."). *See also* Official Revision Comment (1966) to Article 841 ("While a contemporaneous objection is normally required, the necessity for the reservation of a bill of exception is omitted.").

the state court's rejection of Mr. Lewis's Equal Protection claim was "clearly and expressly" predicated on a state procedural bar.

### B.  . . . but if that's what happened, the state procedural bar is certainly not an "adequate" basis for refraining from federal habeas review.

Accepting Respondent's characterization of the state court opinion, however, Mr. Lewis's Equal Protection claim is still properly before this court. *Cf. Kubat v. Thieret*, 867 F.2d 351, 366 n.11 (7th Cir. 1989) (deeming state procedural bar inadequate where state court "ruled that [petitioner] had waived the claim by failing to raise it on direct appeal[,]" but "[t]he record clearly shows … that [petitioner] did in fact raise and argue the issue in his brief on direct appeal"); *Mapes v. Coyle*, 171 F.3d 408, 429 (6th Cir. 1999) (deeming state procedural bar inadequate where petitioner "properly raised [the issue] on post-conviction review and Ohio courts erroneously refused to consider it"); *Forgy v. Norris*, 64 F.3d 399, 402 (8th Cir. 1995) (deeming state procedural bar inadequate where state supreme court's procedural ruling was contrary to the record and applicable state rules). Proper scrutiny of whether the purported state-law procedural bar constitutes an "adequate" reason for denying federal habeas review is essential: were it otherwise, a defendant's federal constitutional rights would be meaningless.

One of many reasons that the merits of Mr. Lewis's Equal Protection claim are properly before this court is that, to be "adequate," the state procedural rule must have been **sufficiently clear** at the time of the purported default to have put the petitioner on notice of what conduct was required. *See, e.g., Ford v. Georgia*, 498 U.S. 411, 423 (1991) (holding state procedural rule so novel that prisoner "could not be deemed to have been apprised of its existence") (internal quotation marks omitted); *James v. Kentucky*, 466 U.S. 341, 346 (1984) (holding rule "not always clear or closely hewn to"); *National Ass'n for Advancement of Colored People v. State of Ala. ex rel. Patterson*, 357 U.S. 449, 457 (1958) ("petitioner could not fairly be deemed to have

been apprised of [the rule's] existence"); *Anderson v. Morrow*, 371 F.3d 1027, 1031 (9th Cir. 2004) (rule was "not clear" because "unevenly applied"); *cf. Moore v. Quarterman*, 533 F.3d 338, 341 (5th Cir. 2008) (en banc). Assuming the state procedural rule to be as Respondent contends—*i.e.*, to preserve a *Batson* challenge, the defendant must object to a peremptory strike, and then object a second time (orally, not just in writing) when the judge denies his objection— this rule was "not always clear or closely hewn to." How could Mr. Lewis have known about this rule (which, to be clear, does not exist) given the complete absence of case law in Louisiana history, or in any other jurisdiction's history, suggesting as much?

Apart from being clear, the state procedural rule must be **announced and firmly established** at the time of the alleged default to serve as an "adequate" basis for barring federal habeas review. State procedural rules not adopted or established until *after* the petitioner defaulted his federal claims in state court do not satisfy the firmly established requirement. *See, e.g., Austin v. Davis*, 876 F.3d 757, 777 (5th Cir. 2017) (holding Texas procedural rule setting forth filing deadlines for state habeas petitions did not apply to petitioner where "the procedural rule had not been clearly announced nor regularly followed because the [state court] had never before interpreted the statute in such a way"). *See also Ford*, 498 U.S. at 424–25 (explaining rule unannounced at the time of the default not firmly established); *Patterson*, 357 U.S. at 457–58 (declining to apply a state procedural rule, even though the rule appeared "in retrospect to form part of a consistent pattern of procedures," because the defendant in that case could not be "deemed to have been apprised of its existence"); *Reynolds v. Ellingsworth*, 843 F.2d 712, 725 (3d Cir. 1988) (holding no clearly established rule at the time of default that required the petitioner to raise ineffective assistance of counsel claims on direct appeal); *accord Fahy v. Horn*, 516 F.3d 169, 188 (3d Cir. 2008) ("whether the rule was firmly established and regularly

followed is determined as of the date the default occurred, not the date the state court relied on it"). Assuming Respondent is right that the purported rule contained in the Answer is, in fact, an accurate synopsis of Louisiana law, it certainly was not at the time of Mr. Lewis's trial.

The purported procedural bar fails for many other reasons, too. State procedural rules that are not **strictly and regularly applied** are not adequate to bar federal merits review. *Johnson v. Lee*, 136 S. Ct. 1802 (2016) (per curiam); *Dugger v. Adams*, 489 U.S. 401, 410 n.6, 109 (1989). "A basis of decision applied infrequently, unexpectedly, or freakishly may be inadequate, for the lack of notice and consistency may show that the state is discriminating against the federal rights asserted." *Prihoda v. McCaughtry*, 910 F.2d 1379, 1383 (7th Cir. 1990); *accord* Bostick v. Stevenson, 589 F.3d 160, 164-65 & n.6 (4th Cir. 2009). *Smith v. Black*, 970 F.2d 1383, 1387 (5th Cir. 1992) (finding inconsistent application where state supreme court in eight cases reached the merits of the same type of claim raised by petitioner despite lack of an objection at trial). The purported rule must not be **"exorbitant[ly]" applied**; this inquiry requires the court to consider (1) whether the alleged procedural violation was actually relied on in the trial court, and whether perfect compliance with the state rule would have changed the trial court's decision; (2) whether state caselaw indicated that compliance with the rule was demanded in the specific circumstances presented; and (3) whether the petitioner had "substantially complied" with the rule given "the realities of trial," and, therefore, whether demanding perfect compliance with the rule would serve a legitimate governmental interest. *Lee v. Kemna*, 534 U.S. 362, 376 (2002) (holding state-law contemporaneous objection rule did not bar claim where counsel had advanced the same claim, unsuccessfully, in pre-trial pleadings). The state procedural rule, even if fairly and consistently applied, must not **unduly burden** the assertion of a federal right. *James v. Kentucky*, 466 U.S. 341, 343–44 (1984); *Staub v. City of Baxley*, 355 U.S. 313, 320 (1958).

The so-called procedural rule invoked by Respondent here fails each of these tests. It is not only irregularly applied; it is never applied, either in the *Batson* context or whenever any other type of trial objection is denied. It is "exorbitant" in the sense that requiring defendants to re-object to the denial of an objection would accomplish nothing, apart from aggravating the trial judge, and Mr. Lewis substantially complied (by raising a *Batson* objection and then filing a superfluous post-trial motion). And it unnecessarily burdens the defendant's rights under *Batson* by erecting a completely needless and pointless hurdle. (This is, to reiterate, why no jurisdiction actually employ's Respondent's purported rule . . . including Louisiana).

A separate reason why the state procedural rule would not bar consideration of Mr. Lewis's *Batson* claim—apart from the "adequacy" inquiry—is that it is not truly independent of the federal law. *Lee*, 534 U.S. at 375 (recognizing "independence" inquiry to be a question of federal law). For a state procedural rule to be "independent," the state law ground for decision must not be "interwoven with the federal law." *Michigan v. Long*, 463 U.S. 1032, 1040 (1983). Here, in *Batson* and its progeny, the U.S. Supreme Court has set forth a familiar framework instructing defendants on how to assert claims that the selection of their jury violated the Equal Protection clause. The *Batson* framework has been criticized on many grounds, but one thing that has never been alleged (because it is simply not part of the framework) is that it requires defendants to object *twice* to the way in which prosecutors have wielded their peremptory strikes. Imposing such a requirement—if that's really what Louisiana courts did—would impermissibly alter the procedures spelled out by the U.S. Supreme Court.[3]

---

[3]    To give only the two most recent examples, in *Mississippi v. Flowers*, 139 S. Ct. 2228 (2019), the U.S. Supreme Court found that the Mississippi Supreme Court erred when it concluded that prosecutor Doug Evans was not racially motivated when he struck juror black prospective juror Carolyn Wright. A brief review of the trial transcript (included at page 220 of Volume I of the Joint Appendix) shows that defense counsel did not "re-object" after their

In short, if Respondent is correct that the state court denied relief based on a "procedural bar," Mr. Lewis's *Batson* claim is still squarely before this Court because the state procedural bar is not "adequate" or "independent." And, notably, Respondent does *not* deny that prosecutors were substantially motivated by race when they used a peremptory strike against Juror No. 15. Respondent knows how to argue in the alternative, *compare* Answer, *24-31 *with* Answer, *34-41 (offering alternative arguments with respect to Confrontation Clause claim), but chose not to include any such alternative arguments in Respondent's Answer with respect to Mr. Lewis's Equal Protection claim. *But see* Rules Governing 2254 Cases, Rule 5 (b) (explaining merits arguments, in addition to any procedural bar arguments, "must" be included in Answer); *see also* Dkt. 4 (Order) (ordering District Attorney to "address the merits" of habeas petition). Given this strategic choice—and Respondent's evident commitment to the strict adherence with procedural rules—no further proceedings are necessary: this Court should declare Mr. Lewis's Equal Protection claim to be established and order a new trial or release. *See* F.R.C.P. 8(b)(6) ("*Effect of Failing to Deny.* An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied.").

## II.     The Double Jeopardy Claim

### A.  The state court did not "clearly and expressly" state that its judgment rested on a state procedural bar . . .

It is even clearer that the state court's handling of Mr. Lewis's Double Jeopardy claim was a denial on the merits, and not on state procedural grounds. Respondent conflates two very

---

*Batson* challenge concerning that juror was denied. The previous *Batson* case before that one, *Foster v. Chatman*, 136 S. Ct. 1737 (2016) arose in the federal habeas context. Again, the U.S. Supreme Court found that prosecutors acted impermissibly in striking jurors Marilyn Garrett and Eddie Hood. Consulting the trial transcript there (page 49 and 58 of the Joint Appendix) no "re-objection" was made to the denial of the *Batson* challenges for those jurors.

different things: a state court ruling that cites various provisions of state law and (erroneously)

holds a Petitioner's federal constitutional rights were not violated, and a state court ruling

refusing to reach the merits of a Petitioner's federal constitutional claim due to procedural

default. In this case, the state court consider (and rejected) Mr. Lewis's federal constitutional

claim on the merits. It did not hold, and certainly did not "clearly and expressly" hold, that it

would not consider the merits of Mr. Lewis's Double Jeopardy claim for failure to adhere to a

state procedural rule that was necessary to preserve the claim.

> **B.  . . . but if that's what happened, the state procedural bar is neither an "independent" nor an "adequate" basis for refraining from federal habeas review.**

Again, if Respondent's characterization of the Fourth Circuit Court of Appeal's opinion

is accepted, Mr. Lewis's claims are still squarely before this Court. His Double Jeopardy claim is

before this Court for many of the same reasons that his *Batson* claim is properly before this

Court. The two main issues, *adequacy* and *independence*, are discussed in turn.

> *1.  Adequacy*

Respondent argues that Mr. Lewis's Double Jeopardy claim was rejected based on the

following procedural rule: "In Louisiana, a state court may declare a mid-trial mistrial for any

reason whatsoever (even with no manifest necessity), over a defendant's strenuous objection, and

then subsequently place the defendant in jeopardy again *if the defendant fails to take an

emergency post-mistrial writ application seeking discretionary, extraordinary relief from the

earlier mistrial*." Is there any published or unpublished Louisiana opinion, from any appellate

court, applying this rule in a case where the defendant objects to a mistrial? There is not. Is there

any case law from any other jurisdiction remotely akin to the rule Louisiana supposedly applies?

There is not. Is such a requirement clear from the text of La. C. Cr. P. art. 775.1? No. Is there

anything in the legislative history of La. C. Cr. P. art. 775.1 to suggest that this was its purpose? No. In short, the rule upon which Respondent relies came nowhere close to serving as an "adequate" basis to strip the federal courts of the ability to evaluate Mr. Lewis's federal claims.

The purported state procedural rule was **not sufficiently clear** at the time of Mr. Lewis's mistrial. As noted above, there has never been a Louisiana appellate opinion (before or after) in which a defendant objected to a mistrial but lost out on his Double Jeopardy claim for failure to employ La. C. Cr. P. art. 775.1, and the Louisiana Supreme Court has never endorsed the Respondent's so-called "rule."[4] To the contrary, the last time the Louisiana Supreme Court spoke on the matter, the Louisiana Supreme Court, following the U.S. Supreme Court, held that the defendant did not even need to object to the earlier mistrial in order to invoke a Double Jeopardy claim (let alone do *more* than that). *State v. Joseph*, 434 So.2d 1057 (La. 1983) ("the failure of the defendant to object to a mistrial which he had not sought and from which he [h]as not benefitted [is] inconsequential since once a mistrial is declared the trial is over"); *State v. Simpson*, 371 So.2d 733 (La. 1979) (same); *cf. State v. DeGrate*, 634 So. 2d 965, 968 (La. App. 2 Cir. 1994), *writ denied*, 644 So. 2d 630 (La. 10/7/94) ("Clearly, the lower court took this action without the accused's request. Furthermore, the absence of a contemporaneous objection does not

---

[4]    The Louisiana Supreme Court's summary denial of a writ application filed in the *Copelin* case, discussed in Mr. Lewis's habeas petition, did not involve a defendant who objected (like Mr. Lewis did) to the earlier mistrial, and in any event, makes no law:

> A denial of supervisory review does not constitute the court's considered opinion on the allegations made in a writ application, but is merely a decision not to exercise the extraordinary powers of supervisory jurisdiction in that case. The denial by a court of appeal of a writ application seeking to invoke that court's supervisory jurisdiction neither "blesses nor adopts the [trial court's] factual determination or expressions of law." *McClendon v. State, Dept. of Transp. And Development*, 642 So.2d 157, 158 (La. 1994).

*Leblanc v. 1555 Poydras Corp.*, 156 So. 3d 1222, 1226 (La. App. 4 Cir. 12/17/14) (emphasis in original) (internal citations omitted). *Accord Davis v. Jazz Casino Co., L.L.C.*, 849 So.2d 497, 498 (La. 2003).

bar a subsequent plea of double jeopardy when the first trial ends in a mistrial by the district

judge's own motion, and when the motion does not benefit the accused.").[5]

The rule was not **announced and firmly established** at the time of Mr. Lewis's case.

Indeed, even if Respondent is correct that this rule *is* a correct statement of Louisiana law today,

Respondent cannot identify *a single published or unpublished opinion* in the history of Louisiana

courts addressing this situation where the defendant has objected to a mistrial. Mr. Lewis would

be the very first.

The rule is not **strictly and regularly applied**. In other recent cases where a defendant

raises a double jeopardy claim after a mistrial (to which he does not consent), Louisiana's

appellate courts have held that the defendant does *not* "waive" or "forfeit" his Double Jeopardy

claim by not invoking the optional mechanism provided by La. C. Cr. P. art. 7751.1. *See, e.g.,*

*State v. Holloway*, 297 So. 3d 957, 966 (La. App. 3 Cir. 5/6/20) (expressly holding that second

trial violated defendant's double jeopardy rights even though defendant did not object to mistrial

declaration and did not seek emergency writ under La. C. Cr. P. art. 775.1).

And, as explained in Mr. Lewis's petition, the purported rule Respondent invokes (if,

indeed, it is a rule) even if fairly and consistently applied would **unduly burden** the assertion of

a federal right. What other right in the Bill of Rights costs at minimum $176 (and many hours

preparing an emergency writ application) in order to assert? Particularly if compliance with the

---

[5]    Other ambiguities abound. Must a defendant file an emergency writ application with only
the intermediate appellate court, or is he required to also seek relief from that decision from the
Louisiana Supreme Court if he initially loses? What happens if no appellate decision is rendered
within 24 hours? Does the same rule apply (as Respondent seems to argue it must) if the
defendant moves for a mistrial at the trial court level because prosecutors have intentionally
goaded him into doing so, and must the defendant then appeal the decision to grant the mistrial
he himself requested if he wants to assert a Double Jeopardy claim? *See Oregon v. Kennedy*, 456
U.S. 667 (1982).

ordinary rule (embraced everywhere else) adequately informs the trial court of the alleged error and adequately informs the appellate courts of the alleged error? The imposition of a "super-objection" requirement—requiring the defendant to first object to a mistrial, and then "super-object" by filing an emergency writ application—would impose a wholly unnecessary burden that is not employed in any federal court or any of the other 49 states. By so burdening the exercise of a fundamental right, it would also be unconstitutional. *Reece v. Georgia*, 350 U.S. 85, 89 (1955) (holding a state procedural rule that is unconstitutional, on its face or as applied, cannot form the basis for a procedural default).

### 2.  *Independence*

A separate reason why the state procedural rule would not bar consideration of Mr. Lewis's federal Double Jeopardy claim is that it is not truly independent of the federal law. *Lee*, 534 U.S. at 375 (recognizing "independence" inquiry to be a question of federal law). For a state procedural rule to be "independent," the state law ground for decision must not be "interwoven with the federal law." *Michigan v. Long*, 463 U.S. 1032, 1040 (1983).

The purported state law ground for denying Mr. Lewis relief can be thought of as "interwoven" with federal law in two ways. First, it is interwoven insofar as federal law dictates that once a mistrial is declared without any "manifest necessity" and over the defendant's objection, jeopardy has terminated and the Double Jeopardy Clause bars retrial; the Fourth Circuit Court of Appeal's opinion seems to indicate that a state procedural rule offering either party the opportunity to take an emergency discretionary writ challenging the mistrial can somehow undo that federal rule, endorsed by the U.S. Supreme Court and every other jurisdiction in the union. *But see Crist v. Bretz*, 437 U.S. 28 (1978) (prohibiting states from announcing "state procedural rules" redefining contours of federal double jeopardy right).

Second, it is interwoven insofar as the Fourth Circuit Court of Appeal hinted at the concept of "waiver," suggesting that Mr. Lewis "waive[d]" certain rights by not pursing an emergency writ application. But under clearly established U.S. Supreme Court jurisprudence, "waiver" of a constitutional right does not occur unless there has been an express, intelligent, and voluntary waiver of that right. *See, e.g., Faretta v. California*, 422 U.S. 806, 835 (1975); *Boykin v. Alabama*, 395 U.S. 238 (1969); *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938). A state procedural rule cannot undo that federal requirement. However one might characterize the opinion of the Fourth Circuit Court of Appeal, one cannot say that its analysis was truly "independent" of federal law.

Louisiana courts, relying on their own idiosyncratic procedures, have shown little regard for the federal Double Jeopardy rights of defendants. *See Davenport v. Richardson*, No. 14-CV-1092, 2015 WL 9906262, at *1 (W.D. La. Apr. 29, 2015), *report and recommendation adopted*, No. 14-CV-1092, 2016 WL 285060 (W.D. La. Jan. 20, 2016) (granting habeas relief on Double Jeopardy grounds). But that does not prevent a federal court from giving the federal right meaning.

For the foregoing reasons, this Court should reach the merits of Mr. Lewis's Double Jeopardy claim. And, again, Respondent's Answer—which does not dispute that a mistrial was declared without manifest necessity or that Mr. Lewis vociferously objected—has made the merits question simple. There was a mistrial; it is undisputed that Mr. Lewis object; and it is undisputed that there was no "manifest necessity" for the mistrial. When prosecutors began calling for a jury the next day, that mistrial was final, yet the State of Louisiana insisted on subjecting Mr. Lewis to jeopardy yet again. Nothing else is needed. Mr. Lewis's Double Jeopardy claim should be promptly granted on these grounds.

### III.    Confrontation Clause Claim

###    A.  Prosecutors did not adduce any evidence of efforts to locate the missing witness before the day of trial.

Respondent does not deny any of the allegations of gross professional misconduct contained in Mr. Lewis's habeas petition. *See* Dkt. 1, at ¶¶ 30-31, *23; Dkt. 1-17 (bar complaint). Nor does Respondent deny that the state court's factual determinations, which literally cut-and-pasted from the erroneous account of the evidentiary hearing provided in District Attorney's brief, are simply wrong. Instead, Respondent asks this Court to accept as true the unsworn accounts of efforts to find the witness provided by the Orleans Parish District Attorney's trial attorneys that were (1) not adduced at an evidentiary hearing, (2) in conflict with the sworn testimony that was provided during the evidentiary hearing, and (3) inconsistent with other accounts provided by the same people. To be clear, prosecutors *claimed* to have made certain efforts to find the missing witness in the week before trial, but they did not present the slightest bit of *evidence* to back up these allegations. The only evidence adduced in the state courts was that the main investigator on the case (1) attempted to locate the missing witness on the morning of trial; and (2) was aware of no other efforts to find the witness conducted by anyone else. *See* Trial Tr. (Oct. 17, 2018) at 123-28.

Asking this Court to accept as true the unsworn and contradictory allegations of trial prosecutors as "fact" would be a remarkable position to adopt in an ordinary case, but it is particularly outrageous here because the same District Attorney's office has (1) previously made false factual representations to a tribunal *about this very matter*, and (2) called into question the trial attorneys' veracity and reliability *on this very matter*. Before the Louisiana Supreme Court, the District Attorney was asked to explain how prosecutors' account of the evidentiary hearing was so badly mangled before the Fourth Circuit Court of Appeal. The Assistant District Attorney

charged with writing the brief there blamed his colleagues: he said the misrepresentations were included because he failed to examine the trial transcript himself and he naively based his account "based on information provided by the [trial] prosecutors." *See* Dkt. 1-19, *13. This is, of course, why we have evidentiary hearings, where factual claims can be subjected to cross-examination under oath: to find out if the proponent of certain claims is providing accurate information.

The record of the evidentiary hearing—which is what the Fourth Circuit Court of Appeal thought it was basing its decision on, and which is the only thing that matters—does not support any of Respondent's factual allegations. That's almost certainly why prosecutors misled the Fourth Circuit Court of Appeals as to the contents of the evidentiary hearing, and refused to correct the record when undersigned counsel begged the District Attorney to do so. *See* Dkt. 1-17. Now, faced with a tribunal that *will* actually look at the evidence adduced at the evidentiary hearing (Trial Tr. (Oct. 17, 2018) at 123-128), Respondent urges this Court to consider everything except the evidence adduced at that hearing. This Court should not accept such misdirection.

In filings before this Court, Respondent continues to misrepresent critically important details. For instance, Respondent states that the witness "*unequivocally* stated that she would not come to court," but conspicuously, Respondent does not include any citation to the record to back up the claim that the witness's alleged statements were "unequivocal." Answer, *31 (emphasis added). Not even the untrustworthy trial prosecutors alleged as much, representing instead that the un-subpoenaed witness "wasn't interested in coming," Trial Tr. (Oct. 17, 2018) at 5, or "did not want" to come without a subpoena, *id.* at 119. But the same prosecutors told the court that they thought they could get the witness to testify "if [the court] could just give us a

day" to keep trying to persuade her, *id.* at 9, just as they successfully accomplished with a different witness who they claimed did not want to attend court, *id.* at 10, 17; Trial Tr. (Oct. 18, 2018) at 134 (witness's testimony). And the record is silent as to what the witness said she would do if legally compelled to attend through proper service. Moreover, at least before he caught himself, the Assistant District Attorney seemed to indicate the witness was affirmatively reaching out to him (rather than the other way around). *Id.* at 119 ("She called me – I actually got through to her one time yesterday."). Perhaps the witness spoke "unequivocally," but it is also possible she spoke "equivocally." This is a critically important point, and it's precisely the sort of detail that could have been resolved if the District Attorney had adduced proper evidence at an evidentiary hearing, through witnesses who Mr. Lewis could cross examine (just as he successfully cross-examined the investigator).

The supposed efforts by prosecutors to locate the missing witness are also rife with unexplained contradictions. For instance, a trial prosecutor told the court that he first realized they lacked a valid number for the missing witness "in mid September," *id.* at 117, but this fact is entirely omitted from his motion to declare the witness unavailable (which made it sound like prosecutors were surprised to learn that they lacked a good phone number for her until the eve of trial in October), *see* R. 111. The record is silent as to why, as week after week went by in September and early October, prosecutors did nothing to locate Ms. Fowler despite knowing they lacked a good way of reaching her. When prosecutors did allegedly connect with Ms. Fowler via telephone on the eve of trial, it is unclear whether she called them ("She called me," *id.* at 119)), or whether prosecutors called her, *see* R. 111 (indicating Nickel is "successful in calling Ms. Fowler"). If it was the latter, how was this possible, given prosecutors' repeated representations that they lacked any working phone number for her throughout this entire window of time? At

what point did prosecutors have in their possession the phone number that, it turns out, was Ms. Fowler's all along?

Perhaps most egregiously, one is left wondering why prosecutors did not go to her house in Houma to serve her with a subpoena? As best as one can tell from the convoluted transcript, prosecutors believed Ms. Fowler was now living in Houma, (Trial Tr. (Oct. 17, 2018) at 5); were told by her sister that she was living in Houma (*id.*); knew that she had a Houma telephone number (*id.*); and even **had an address for her in Houma** (Trial Tr. (Oct. 17, 2018) at 117) (referencing "the Houma address"). Yet prosecutors never even attempted to send a representative to that address until the trial was already underway, and maybe not even then! Such an "effort" to find a witness cannot be deemed diligent.

Even if prosecutors adduced evidence in support of their alleged efforts to find the witness as set forth in Respondent's Answer, and even if the trial court accepted this evidence as credible, the witness still was not "unavailable" for purposes of federal law. Respondent's effort to distinguish *Tirado-Tirado* is unpersuasive, and actually supports Mr. Lewis's point: the Government cannot claim a witness is "unavailable" when the Government does not start looking for her until days before a trial. And the fact that the witness was (1) apparently in the nearby town of Houma; (2) answering her cell phone (and maybe even affirmatively calling the prosecutor); (3) and had a good working relationship with other members of the same District Attorney's office cuts in favor of Mr. Lewis's argument, not against it.

### B. The error was not harmless

Respondent does not dispute Mr. Lewis's contention that the Fourth Circuit Court of Appeal's harmless error analysis—which ignored the U.S. Supreme Court's admonition that prosecutors carry the burden of showing "no reasonable possibility that the evidence . . . might

have contributed to the conviction," *see United States v. Sarli*, 913 F.3d 491, 496 (5th Cir. 2019)—improperly disregarded the *Chapman* standard. Accordingly, that determination is owed no deference. But the parties dispute what species of harmlessness review applies now: Respondent argues for the less liberal *Brecht* standard, while Mr. Lewis argues for *Chapman*

  The violation of Mr. Lewis's Confrontation Clause rights was not "harmless" under either approach, but the *Brecht* standard does not apply here. In *Brecht*, the Court expressly noted that its holding did not apply to "unusual case[s]" like Mr. Lewis's where the state courts and prosecutors have engaged in serious misconduct or state tribunals have otherwise shown systematic indifference to the defendant's rights. *See Brecht v. Abrahamson*, 507 U.S. 619, 638 n.9 (1993) ("Our holding does not foreclose the possibility that in an unusual case, a deliberate and especially egregious error of the trial type, or one that is combined with a pattern of prosecutorial misconduct, might so infect the integrity of the proceeding as to warrant the grant of habeas relief, even if it did not substantially influence the jury's verdict. Cf. *Greer v. Miller,* 483 U.S. 756, 769 (1987) (Stevens, J., concurring in judgment)). If this case is not one of the "unusual cases," it's hard to imagine what is.

  Even under the more demanding definition of "harmlessness" set forth in *Brecht*, the inclusion of Ms. Fowler's testimony had a "substantial and injurious effect or influence" on the jury. Mr. Lewis's petition—which discusses the relevant evidence and the powerful ways in which prosecutors used Ms. Fowler's testimony to corroborate the complaining witness's account—outlines why.

  Mr. Lewis's only addition is to clarify a point that Respondent apparently misapprehends concerning the State's failure to convict Mr. Lewis during the first trial. On this point, Respondent writes: "To argue that the transcript of Ms. Fowler's testimony caused the October

18, 2018 jury to convict Lewis when the April 4, 2018 hung jury heard that same testimony is a logical fallacy." Answer, *40. To clarify, Mr. Lewis's point is not that the April 4 jury was deadlocked because they heard live testimony from Ms. Fowler (and that the October 18 jury also would have been deadlocked had they received live testimony instead of a transcript). Rather, Mr. Lewis's point in highlighting the earlier mistrial is to demonstrate that it is manifestly false to claim, as Respondent does, that the "[e]vidence of Lewis's guilt was overwhelming." Answer, *35. If evidence of Mr. Lewis's guilt were so overwhelming, the April 4 trial—which featured all of the same evidence—would not have ended in a mistrial. When evaluating what impact Mr. Fowler's erroneously admitted testimony had on the October 18 jury, we are forced to imagine a hypothetical trial in which that testimony was not admitted *at all*, not a trial in which Ms. Fowler again appeared to provide live testimony. The April 4 mistrial demonstrates that the allegations against Mr. Lewis, in fact, presented jurors with a close case (with or without Ms. Fowler's testimony), and this is important to recognize when "fully consider[ing] *all* the ways in which the complained-of error infected the course of the petitioner's trial—as the habeas court must decide *that the error did not influence the jury*, and that the judgment was not substantially *swayed* by the error."). *Cupit v. Whitley*, 28 F.3d 532, 538 n.18 (5th Cir. 1994) (emphasis in original). Had Ms. Fowler's testimony been properly excluded, Mr. Lewis would not have been convicted in the October 18 trial.

### IV.    Conclusion

Respondent, after being ordered to respond on the merits, purports to "respectfully reserve[] the right to respond to those claims on the merits" at some later date. *Id.* at *21. No authority is cited for the claimed "right" to choose when Respondent would like to respond. *But see* Rules Governing Section 2254 Cases. Given Respondent's emphasis on the (non-existent) procedural rules Mr. Lewis allegedly disregarded (and Respondent's unclean hands throughout this

litigation), this Court should not prolong Mr. Lewis's wrongful and unconstitutional imprisonment by affording Respondent a second bite at the apple.

Respectfully submitted,

/s/ *Thomas W. Frampton*
Thomas W. Frampton, La. Bar No. 35775
*Counsel for Petitioner Lerone Lewis*
Associate Professor
University of Virginia School of Law
580 Massie Road
Charlottesville, VA 22903
tel: 202.352.8341
*Affiliation for Identification Only*