## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

LERONE LEWIS                                    CIVIL ACTION NO.

VERSUS                                          20-484-JWD-EWD

JASON KENT, ET AL.

## <u>NOTICE</u>

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U. S. District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein. Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on November 18, 2022.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

LERONE LEWIS                                    CIVIL ACTION NO.

VERSUS                                          20-484-JWD-EWD

JASON KENT, ET AL.

<u>MAGISTRATE JUDGE'S REPORT, RECOMMENDATIONS, AND ORDER</u>

Before the Court is a Petition for Writ of Habeas Corpus,[1] filed by Lerone Lewis ("Petitioner"). As the Court is granting Petitioner's Unopposed Motion to Amend Habeas Petition ("Motion to Amend"),[2] only one ground for relief remains: Petitioner's assertion that his trial on October 18, 2018 violated the Double Jeopardy Clause of the Fifth Amendment after a jury was empaneled and a mistrial declared on October 17, 2018. The State has filed a Response.[3] It is recommended that the Petition be denied on the merits. There is no need for oral argument or for an evidentiary hearing.

I.    PROCEDURAL HISTORY[4]

On December 5, 2017, Petitioner was charged by bill of information with one count of aggravated battery.[5] Petitioner was first tried on this charge on April 4, 2018,[6] but, due to a hung jury, a mistrial was granted.[7] Petitioner's second trial on these charges began on October 17, 2018.[8] However, after hearing pre-trial motions, conducting voir dire, and empaneling the jury,

---

[1] R. Doc. 1.
[2] R. Doc. 19.
[3] R. Doc. 7. Petitioner has also filed a Reply. R. Doc. 9.
[4] As the substantive facts regarding the charges against Petitioner are not at issue, a summary of those facts is not provided.
[5] R. Docs. 7-1, p. 1; 1-16, p. 63.
[6] R. Doc. 7-1, p. 3.
[7] R. Doc. 7-1, p. 3. The granting of this mistrial is not the basis of the double jeopardy claim asserted in the habeas petition.
[8] R. Doc. 7-6, p. 173.

the trial court granted a mistrial due to the unavailability of certain jurors to continue trial the following day.[9] Petitioner proceeded to trial on October 18, 2018 and was found guilty.[10] On October 18, 2018, before the trial began, Petitioner filed a motion to quash the bill of information, arguing that double jeopardy had attached after the trial court improperly declared a mistrial on October 17, 2018. The motion was denied.[11] Petitioner also filed multiple post-trial motions, including a Motion for Arrest of Judgment, again arguing double jeopardy, and a Motion for New Trial.[12] Those motions were also denied.[13] Petitioner was originally sentenced to ten years hard labor.[14] After original sentencing, the State filed a motion seeking to sentence Petitioner as a habitual offender.[15] On April 16, 2019, Petitioner appeared before the trial court for a multiple bill hearing and was sentenced to serve twenty years as a "double offender."[16]

Petitioner timely filed a direct appeal.[17] On February 12, 2020, the Louisiana Court of Appeal for the Fourth Circuit ("Fourth Circuit") affirmed Petitioner's conviction and sentence.[18] Petitioner sought review with the Louisiana Supreme Court, which summarily denied the writ on June 22, 2020.[19] The Petition for Writ of Habeas Corpus was timely filed in this Court on July 28, 2020.[20]

---

[9] R. Doc. 7-6, pp. 320-321.
[10] R. Doc. 7-5, p. 278.
[11] R. Doc. 7-1, pp. 5, 162-166.
[12] R. Doc. 7-1, pp. 195-199, 201-208.
[13] R. Doc. 7-1, p. 6.
[14] R. Doc. 7-1, p. 157.
[15] R. Doc. 7-1, p. 6.
[16] R. Doc. 7-6, pp. 325-353; R. Doc. 7-1, p. 8. Petitioner has since been re-sentenced to five years imprisonment. R. Doc. 20, n.1.
[17] R. Doc. 7-1, p. 6; R. Doc. 1-7.
[18] R. Doc. 1-14.
[19] R. Doc. 1-16; R. Doc. 1-22.
[20] R. Doc. 1.

## II.    LAW & ANALYSIS

### A.  The Motion to Amend Will be Granted

Petitioner's Motion to Amend[21] seeks to withdraw with prejudice his claims for relief under the Confrontation Clause and the Equal Protection Clause. Habeas applications "may be amended or supplemented as provided in the rules of procedure applicable to civil actions."[22]  Pursuant to Fed. R. Civ. P. Rule 15(a)(2), "a party may amend its pleading only with the opposing party's written consent or the court's leave."  Rule 15(a)(2) further provides that "[t]he court should freely give leave when justice so requires."  As Respondents have not timely opposed the Motion to Amend,[23] and since the Motion seeks to withdraw certain claims "pursuant to an agreement with Respondents,"[24] the Motion to Amend[25] will be granted.  The only claim remaining before this Court is Petitioner's Double Jeopardy claim.

### B.  Petitioner's Double Jeopardy Claim Is Not Procedurally Defaulted[26]

Respondents' sole argument against Petitioner's double jeopardy claim is that this Court is barred from undertaking review on the merits of this claim because it is procedurally defaulted.[27] The Fourth Circuit did not reach the merits, but dismissed the double jeopardy claim on procedural grounds, stating that because Petitioner "failed to seek emergency review of the district court's mistrial order in accordance with La. C.Cr. P. art. 775.1," he waived his right to proceed to trial with the dismissed jury.[28]

---

[21] R. Doc. 19.

[22] 28 U.S.C. § 2242.

[23] More than twenty-one (21) days have passed since the Motion to Amend was filed. *See* Local Civil Rule 7(f).

[24] Petitioner's Motion for Expedited Consideration, filed October 14, 2022, explains that these claims were withdrawn by agreement with the State to permit resentencing in state court.  R Doc. 20. The state court imposed a new sentence on Petitioner of five years imprisonment (as opposed to twenty years).

[25] R. Doc. 19.

[26] The Petition is clearly timely, as admitted by Respondent, so a timeliness analysis is not undertaken.  *See* R. Doc. 7, p. 8.

[27] R. Doc. 7, pp. 9-13.

[28] *State v. Lewis*, 19-448 (La.App. 4 Cir.  2/12/20), 292 So.3d 945, 951.

Generally, a federal court will not review a question of federal law presented to a state habeas court if the decision of the state court rests on a state procedural rule that is both independent of the federal claim and adequate to support the judgment.[29]  A federal court that reviews a state prisoner's habeas claim must respect a state court's determination that the claim is procedurally barred under state law.[30]  Whether procedural default has occurred on any asserted claim is a threshold issue for a federal habeas court.[31]

When one reasoned state court decision rejects a federal claim on the basis of an independent and adequate state procedural ground, subsequent unexplained orders that uphold that judgment or reject the same claim are considered by a federal habeas court to rest on the same ground as did the reasoned state judgment for purposes of the procedural default doctrine.[32]  The Court "presume[s] the adequacy and independence of a state procedural rule when the state court expressly relies on it in deciding not to review a claim for collateral relief."[33]  A state procedural rule is "independent" if the last reasoned state court opinion clearly and expressly indicates that its decision is independent of federal law.[34]  Contrary to Petitioner's argument, the last reasoned state court opinion relied on Louisiana Code of Criminal Procedural article 775.1 (and a prior Fourth Circuit opinion interpreting that statute) to find that Petitioner had waived his right to proceed with the dismissed jury.  The Fourth Circuit dismissed Petitioner's double jeopardy claim based on this

---

[29] *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991); *Amos v. Scott*, 61 F.3d 333, 338 (5th Cir. 1995).

[30] *Williams v. Cain*, 125 F.3d 269, 275 (5th Cir. 1997), citing *Wainwright v. Sykes*, 433 U.S. 72, 90-91 (1977).

[31] *See, e.g., Carter v. Vannoy*, No. 14-2407, 2015 WL 3404068, at *4 (E.D. La. May 26, 2015), citing *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997)('The threshold questions on habeas review under the amended statute are whether the petition is timely and whether the claim raised by the petitioner was adjudicated on the merits in state court, *i.e.*, the petitioner must have exhausted state court remedies and the claims must not be in 'procedural default.'").

[32] *Bledsue v. Johnson*, 188 F.3d 250, 256 (5th Cir. 1999) ("Termed the 'look through' doctrine, this presumption enables federal courts to ignore-and hence, look through-an unexplained state court denial and evaluate the last reasoned state court decision).

[33] *Sones v. Hargett*, 61 F.3d 410, 416 (5th Cir. 1995), citing *Harris v. Reed*, 489 U.S. 255, 262 (1989).

[34] *Reed v. Scott*, 70 F.3d 844, 846 (5th Cir. 1995).

state procedural rule and squarely refused to reach the merits.[35] Accordingly, the only question becomes whether this state procedural rule was adequate.

"The 'adequacy' of a state procedural rule depends on whether it is 'strictly or regularly followed' by the state courts."[36] The petitioner "bears the burden of showing that the state did not strictly or regularly follow a procedural bar around the time of his appeal" and "must demonstrate that the state has failed to apply the procedural bar rule to claims identical or similar to those raised by the petitioner himself."[37] Petitioner "has the burden of establishing that the state did not strictly or regularly follow a procedural bar around the time of his denial of relief in state court."[38]

The Eastern District of Louisiana recently found that Article 775.1 constitutes an adequate and independent state ground.[39] *Copelin* involved a declaration of a mistrial because the state trial court determined that the jury was deadlocked.[40] After a subsequent trial, Petitioner filed a direct appeal complaining that he had been subjected to double jeopardy.[41] The Fourth Circuit relied on Article 775.1 and determined that the double jeopardy issue was not preserved for review due to the defendant's failure to utilize the mandatory procedures of Article 775.1.[42] The *Copelin* court concluded that the petitioner failed to rebut the presumption of adequacy afforded to state procedural rules because he failed to show that Article 775.1 is not strictly and regularly followed.[43] *Copelin* also rejected the petitioner's reliance on *State v. Holloway*,[44] finding that,

---

[35] *Lewis*, 292 So.3d at 950-951.
[36] *Muniz v. Johnson*, 132 F.3d 214, 220 (5th Cir. 1998).
[37] *Stokes v. Anderson*, 123 F.3d 858, 860 (5th Cir. 1997).
[38] *Rogers v. Miss.*, 555 Fed.Appx. 407, 408 (5th Cir. 2014) (per curiam), citing *Stokes*, 123 F.3d at 860.
[39] *Copelin v. Vannoy*, No. 18-10970, 2021 WL 6125050, at *18 (E.D. La. Dec. 28, 2021).
[40] *Id.*, at *1.
[41] *Id.* at *16.
[42] *Id*. The Fourth Circuit opinion in *State v. Copelin*, No. 16-0264 (La.App. 4 Cir. 12/7/16), 206 So.3d 990, 1000, was relied on by the Fourth Circuit on Petitioner's direct appeal. *Lewis*, 292 So.3d at 951. The Eastern District was deciding Copelin's federal habeas claims after they were rejected by the Fourth Circuit on direct appeal.
[43] *Id.*, at *18.
[44] 297 So.3d 957 (La.App. 3 Cir. 2020).

unlike in *Holloway*, "[i]n Copelin's case, the judge did not rely on Copelin's consent as the statutory basis of the mistrial, and instead relied on the jury's inability to reach a verdict."[45] However, the *Copelin* opinion rests primarily on an evaluation of Louisiana state court cases where Article 775.1 was employed (and distinguishes *Holloway*, where Article 775.1 was discussed but not imposed as a prerequisite to analyzing the meris of a double jeopardy claim). *Copelin* does not analyze relevant cases with similar facts where Article 775.1 should have been utilized but was not. Similar cases in the relevant timeframe demonstrate that Article 775.1 was not relied on by other Louisiana appellate courts that considered double jeopardy arguments on the merits without regard to whether a writ was filed pursuant to Article 775.1, even where a mistrial was declared because of a hung jury, exactly the facts of *Copelin*.

For example, in *State v. White*, the defendant raised a double jeopardy claim on appeal after a mistrial was declared by the trial court as to certain counts because the jury was unable to reach a verdict.[46] The Louisiana First Circuit Court of Appeals considered the merits of the defendant's double jeopardy claim without regard to whether he had filed an emergency writ pursuant to Article 775.1.[47] Based upon the procedural history, it does not appear that such a writ was filed.[48] Similarly, in *State v. Washington*, at the defendant's first trial, a mistrial was declared as to one count of second degree murder, while the defendant was convicted as to the other count.[49] The defendant was then retried as to the count for which a mistrial was declared.[50] The opinion by the Louisiana Fifth Circuit Court of Appeals analyzed the double jeopardy claim on the merits, without

---

[45] *Copelin*, 2021 WL 6125050, at *18.
[46] No. 2017-0308 (La.App. 1 Cir. 9/15/17), 228 So.3d 213, 215.
[47] *White*, 228 So.3d at 222-23.
[48] *White*, 228 So.3d at 215.
[49] No. 14-522 (La.App. 5 Cir. 2/11/15), 168 So.3d 746, 749-50, *writ denied,* 2015-0475 (La. 1/15/16), 184 So.3d 704.
[50] *Id.*

reference to Article 775.1.[51]  Considering that other Louisiana appellate courts around the time of Petitioner's appeal fail to even reference Article 775.1 in situations where it would have been applicable, it does not appear that Article 775.1 was strictly or regularly followed to constitute an adequate state procedural bar.[52]

Though it is clear that the purpose of Article 775.1 was to preserve "the contemporaneous objection rule with respect to the declaration of a mistrial"[53] and to allow for immediate review as to mistrials, for the purpose of avoiding double jeopardy, appellate courts throughout Louisiana have failed to employ the statute, instead considering double jeopardy claims on the merits even when the procedural requirements of Article 775.1 were not followed.  As Article 775.1 was not applied evenhandedly at the time of Petitioner's appeal, that provision does not constitute an adequate state procedural rule, and this Court must analyze the merits of Petitioner's double jeopardy claim.

### C.  Petitioner's Double Jeopardy Claim Fails on the Merits

The Fifth Amendment to the United States Constitution protects a criminal defendant from repeated prosecutions for the same offense.[54]  As a part of this protection against multiple prosecutions, the Double Jeopardy Clause affords a criminal defendant a "valued right to have his

---

[51] *Id.* The Louisiana Supreme Court denied review in *Washington*, although Article 775.1 was not analyzed with regard to the double jeopardy claim. Even in *Holloway*, a more recent case, a Louisiana appellate court did not find that a failure to follow the requirements of Article 775.1 barred consideration of a defendant's double jeopardy claim. *Holloway*, 297 So.3d 957, 965-66 (reversing conviction finding that second trial violated double jeopardy notwithstanding that the provisions of 775.1 had not been followed). The Eastern District's distinguishing of *Holloway* is not controlling, nor is it persuasive considering the other Louisiana appellate court cases in that time frame that did not require use of the procedure in Article 775.1 under similar facts.

[52] Petitioner has the burden of demonstrating that a state procedural rule is not strictly or regularly followed. Although Petitioner, who is represented by counsel, failed to direct the Court's attention to the Louisiana state court cases where Art. 775.1 was not discussed or followed around the time of Petitioner's direct appeal, he does argue that his case is the first to apply the "super-objection" requirements of 775.1 when a defendant has objected to the declaration of a mistrial.  R. Doc. 1, p. 17.

[53] *State v. Copelin*, 206 So. 3d 990, 1000 (La.App. 4 Cir. 2016), *writ denied*, 227 So.3d 286 (La. 2017).

[54] *United States v. Dinitz*, 424 U.S. 600, 606 (1976).

trial completed by a particular tribunal."[55]  "It also bars abusive governmental conduct designed to harass a defendant through repetitive prosecution or undertaken for the purpose of increasing the likelihood of conviction."[56] The Double Jeopardy Clause, however, does not offer a guarantee to the defendant that the State will vindicate its societal interest in the enforcement of the criminal laws in one proceeding.[57]  Jeopardy attaches when the jury is empaneled and terminates when a mistrial is declared, though there are a host of exceptions with respect to this general rule.[58]

When the trial is terminated over the objection of the defendant, the test for lifting the double jeopardy bar to a second trial is the "manifest necessity" standard first enunciated in *United States v. Perez*.[59] If the trial court judge granted a mistrial due to a "manifest necessity," jeopardy was not terminated.[60]  However, the standard for what constitutes "manifest necessity" is fluid.[61] On one extreme, "the strictest scrutiny is appropriate when the basis for the mistrial is the unavailability of critical prosecution evidence, or when…the prosecutor is using the superior resources of the State to harass or achieve a tactical advantage over the accused." On the other extreme, "is the mistrial premised upon the trial judge's belief that the jury is unable to reach a

---

[55] *Wade v. Hunter*, 336 U.S. 684, 689 (1949).

[56] *United States v. Bauman*, 887 F.2d 546, 559 (5th Cir. 1989), citing *Arizona v. Washington*, 434 U.S. 497, 503-04 (1978) (retrial increases the financial and emotional burden on the accused, prolongs the stigma associated with unresolved charges, and increases the risk that an innocent person may be convicted).

[57] *United States v. Jorn*, 400 U.S. 470, 483-48 (1971) (plurality opinion).

[58] *See Coleman v. State of Tenn.*, 97 U.S. 509, 521 (1878) (noting many long-recognized exceptions to termination of jeopardy).

[59] 9 Wheat. 579, 580 (1824). In *Perez*, the Supreme Court said that trial judges may declare mistrials "whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated."  *Id.*

[60] *See, e.g.*, *United States v. Scott*, 437 U.S. 82, 93-94 (1978); *Bauman*, 887 F.2d at 549.

[61] *See United States v. Medina*, 175 Fed.Appx 541, 544 (3rd Cir. 2006) ("What conditions constitute 'manifest necessity' is not a mechanical inquiry. The determination must be based on the particular facts and circumstances of the case giving rise to the declaration of a mistrial.").

verdict, long considered the classic basis for a proper mistrial," in which instance "the trial judge's decision to declare a mistrial…is therefore accorded great deference by a reviewing court." [62]

"For purposes of appellate review, the trial court's finding of 'manifest necessity' for a *sua sponte* declaration of mistrial is to be upheld if the court exercised 'sound discretion' in making that determination. Application of this standard requires appellate courts to give the judge's mistrial order the 'highest degree of respect,' as he is most familiar with the events that compromised the trial. The availability of alternatives less draconian than a mistrial does not necessarily preclude reprosecution, as reasonable judges may differ concerning proper curative measures." [63]

The relevant circumstances surrounding the declaration of mistrial by the trial court on October 17, 2018 are as follows:  When the jury venire first entered the courtroom, the trial court stated that the trial was expected to be a one-day trial but that it may "go into tomorrow." [64]  He was then advised by a juror that October 17, 2018 was the last day for jury service for some members of the venire. [65]  Thus, the judge pivoted and noted that the court would try to wrap up trial on the same day as only seven jurors were needed.  The judge reiterated that he expected it to be a one-day trial. [66] After voir dire, the jury was empaneled. [67]  The court then took up pre-trial

---

[62] *Arizona*, 434 U.S. at 507-510 (1978).  Respondent only raised a procedural defense to Petitioner's double jeopardy claim.  Because the merits were not reached by the state court, this Court reviews the claim *de novo* under the legal standard generally governing the underlying constitutional claim, *i.e.*, double jeopardy.  *See Sturgeon v. Quarterman*, 615 F.Supp. 546, 561 (S.D. Tex. May 12, 2009) (noting that *de novo* review applied due to the lack of a merits ruling by the state court, but that the normal legal standard governing allegations of ineffective assistance of counsel applied). Based on a review of the record, Petitioner has not demonstrated that the trial court abused its discretion in granting a mistrial.

[63] *Bauman*, 887 F.2d at 549-50 (citations omitted).

[64] R. Doc. 7-6, p. 192.

[65] R. Doc. 7-6, p. 193.

[66] *Id.*

[67] R. Doc. 7-6, p. 290.  The trial judge originally denied the State's request for break before beginning trial but acquiesced when the prosecutor explained that there were issues that needed to be addressed outside the presence of the jury. R. Doc. 7-6, pp. 290-91.

issues outside of the presence of the jury, which included testimony.[68]  Once those issues were

resolved, the jurors were returned to the courtroom, and the court was apprised of two jurors'

conflicts if the trial continued into the following day.[69]  The court questioned the jurors regarding

their conflicts and inquired as to the potential resolvability of the conflicts.  The jurors stated that

they had been unable to resolve the conflicts.[70]  The court then conferred with counsel outside of

the presence of the jury, noting that "it[] [was] four o'clock in the evening and [they] ha[dn't] even

put on the first witness yet," nor had they even made opening statements.[71]  The court admonished

the attorneys for setting trial on the last day of jury duty for some members of the venire and for

not taking "into consideration for jury service."[72]  The court further explained "[i]t's not on the

Court.  I didn't set this trial date. You guys set the trial date. You should have known this was the

last day of jury service for these jurors. Then you take all day for voir dire. So what do you all

want to do?"[73]  The judge further conferred with the attorneys and then stated that he would

question the jurors regarding if they could proceed with trial the following day.  "If they say yes,

okay, we'll go on with it. If they say no, you've got a problem."[74]  After polling the jury, the record

shows that only three responded that they were available to return for jury service the following

day.[75]  Considering the unavailability of multiple jurors, the trial court determined the best course

of action was to declare a mistrial and to reset the trial for the following day, relying on Louisiana

Code of Criminal Procedure articles 775(A)(5) and 775(A)(3).[76]  Counsel for Petitioner objected,

---

[68] R. Doc. 7-6, pp. 292-314.
[69] R. Doc. 7-6, p. 314.  Some members of the jury venire's last set day to participate in jury duty was the day they were empaneled for Petitioner's trial.  R. Doc. 7-6, p. 193.
[70] R. Doc. 7-6, pp. 315-316.
[71] R. Doc. 7-6, p. 316.
[72] R. Doc. 7-6, p. 316.
[73] R. Doc. 7-6, pp. 316-317.
[74] R. Doc. 7-6, p. 319.
[75] R. Doc. 7-6, p. 320.
[76] R. Doc. 7-6, p. 320-21.

and the State recited on the record that "the basis for the mistrial was moved on by the Court. The State did not elect a mistrial…. The Court mistrialed this case without motion for the State and the Defense.  Both parties were present and ready to proceed to trial."[77]

Petitioner's argument -- that "[w]hen a trial court declares a mistrial *sua sponte* but fails to consider alternatives (*e.g.*, a continuance) and fails to weigh the defendant's interest in having the trial completed, the 'manifest necessity' standard is automatically not met"[78] -- is a broad overstatement.[79]  The Fifth Circuit has been clear that though alternatives to a mistrial must be considered, it is "also clear that the Constitution does not require canvassing of specific alternatives or articulation of their inadequacies."[80]  The Supreme Court has also been clear that a "state trial judge's mistrial declaration is not subject to collateral attack in a federal court simply because he failed…to articulate on the record all the factors which informed the deliberate exercise of his discretion."[81]  Further regarding manifest necessity and consideration of alternatives, this Circuit has aptly recognized as follows:

> Manifest necessity does not mean absolute necessity that a judge declare a mistrial; "we assume that there are degrees of necessity and we require a 'high degree' before concluding that a mistrial is appropriate." In reviewing such an action by a state trial judge, we must accord "great deference" to the trial judge's "'sound discretion' in declaring a mistrial." A trial judge has acted within his sound discretion in rejecting possible alternatives and in granting a mistrial, if reasonable judges could differ about the proper disposition, even though "(i)n a strict, literal sense, the mistrial (is) not 'necessary.'"[82]

---

[77] R. Doc. 7-6, pp. 322-323.

[78] R. Doc. 1, p. 12.

[79] Petitioner cites *United States. v. Fisher*, 624 F.3d 713, 722 (2010) out of context in relation to the necessity of considering alternatives, as *Fisher* dealt with scheduling conflicts and absences of key witnesses *for the prosecution*, and thus, the decision to declare a mistrial was subject to the strictest scrutiny under the "manifest necessity" standard.

[80] *Cherry v. Director, State Bd. of Corr.*, 635 F.2d 414, 418 (internal citations and quotation marks omitted).  *See also Ross v. Petro*, 515 F.3d 653, 669 (6th Cir. 2008) (trial court judge had "no duty to consider every conceivable alternative.").

[81] *Arizona*, 434 U.S. at 517.  *See also Renico v. Lett*, 559 U.S. 766, 779 (2010) (The trial court judge was not required to consider *all* available alternatives prior to declaring a mistrial. "In concluding that Lett is not entitled to a writ of habeas corpus, we do not deny that the trial judge could have been more thorough before declaring a mistrial.").

[82] *Cherry*, 635 F.2d at 418–19.

Here, the state court judge questioned the jurors with conflicts regarding alternatives for childcare and changing appointments, conferred with counsel, and questioned jurors a second time regarding availability. [83]  After being satisfied that this jury would not be able to try the case into the following day, the judge declared a mistrial and dismissed the jury.[84]  The state trial court judge also clearly took into consideration that, for at least some members of the jury, October 17, 2018 was the set last day of their jury term. Though Petitioner argues that the trial could have proceeded on October 17, 2018 without the need to go into the next day,[85] this alternative was not presented by the defense or the prosecution at the trial. Considering that it was after 4:00 p.m. when the mistrial was declared, and opening statements had not yet been given, Petitioner's argument -- that this trial would have reasonably concluded on October 17, 2018 had it been allowed to proceed – is a stretch.  Further casting doubt on this argument is the fact that, in Petitioner's April 2018 trial, jury selection was completed at 1:16 p.m., and closing arguments did not conclude until 9:18 p.m.[86] Petitioner is also incorrect that "the trial court did not inquire" into the nature of jurors' conflicts, difficulty rescheduling, or potential avenues for remedying the conflicts. The record reflects that the trial court spoke to at least two jurors regarding the nature of their conflicts and possible resolution.[87]

Though in a "literal sense" mistrial may have not been necessary, the trial judge exercised his discretion in declaring a mistrial.[88] Considering that the mistrial was not provoked by the State

---

[83] R. Doc. 7-6, pp. 314-320.

[84] R. Doc. 7-6, p. 320-21.

[85] R. Doc. 1, p. 13.

[86] R. Doc. 7-1, p. 3.

[87] *See* R. Doc. 7-6, pp. 314-316.

[88] The case of *Davenport v. Richardson*, No. 14-1092, 2015 WL 9906262 (W.D. La. Apr. 29, 2015), report and recommendation adopted, No. 14-1092, 2016 WL 285060 (W.D. La. Jan. 20, 2016), relied on by Petitioner (R. Doc. 1, p. 19), is distinguishable.  In *Davenport*, the habeas court concluded that the petitioner was acquitted by the trial judge in his first trial, notwithstanding that the acquittal was not procedurally proper, such that a second trial was barred by double jeopardy. *Davenport*, 2015 WL 9906262, at *7.

nor based upon unavailability of prosecution witnesses, this scenario is more akin to opting to declare a mistrial due to a hung jury. "The proposition that the legitimate unavailability of a juror is 'manifest necessity' permitting retrial has been widely accepted, in varying formulations."[89] The state trial court judge is, therefore, entitled to deference in the decision to grant a mistrial under the facts of this case.[90] As the record establishes manifest necessity for the declaration of a mistrial on October 17, 2018, Petitioner's double jeopardy claim is without merit.

### D. A Certificate of Appealability Should be Issued with Respect to Whether "Manifest Necessity" Existed for Granting the Mistrial on October 17, 2018

Should Petitioner pursue an appeal, a certificate of appealability should be granted. Although Petitioner has not yet filed a Notice of Appeal, the Court may address whether he would be entitled to a certificate of appealability.[91]  A certificate of appealability may issue only if a habeas petitioner has made a substantial showing of the denial of a constitutional right.[92]  In cases where the Court has rejected a petitioner's constitutional claims on substantive grounds, a petitioner must demonstrate that "jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are

---

[89] *Cherry*, 635 F.2d at 419 (collecting cases); *see also United States. v. Campbell*, 544 F.3d 577, 583 (5th Cir. 2008) ("[t]he proposition that the legitimate unavailability of a juror is 'manifest necessity' permitting retrial has been widely accepted.").

[90] *Cherry*, 635 F.2d at 418-419, citing *Arizona*, 424 U.S. at 506 (noting that federal courts should accord "great deference" to the trial court's "sound discretion in declaring a mistrial").  *See also Dunkerley v. Hogan*, 579 F.2d 141, 145 (2nd Cir. 1978) ("we accord the highest degree of respect to the trial judge's evaluation."); Though the trial court judge could have inquired into the future availability of the jurors, as argued by Petitioner (R. Doc. 1, p. 13); potentially found a future date that worked for all jurors, himself, and the parties; and granted a continuance rather than a mistrial, he exercised his discretion in choosing the latter.  Simply put, the trial court judge was not required to inquire as to the availability of all jurors to find a future date that worked for all parties involved, and for a least some jurors, their jury duty was supposed to be conclude on October 17, 2018.  *See Castro v. Galaza*, 126 Fed.Appx. 377, 378 (9th Cir. 2005) (mistrial properly granted when defense counsel had to be replaced due to a conflict of interest and 120-day continuance was granted.  The trial court judge did not have to question the jurors about the actual hardships they would face if they had to return in 120 days).  It is also worth note that on August 29, 2018, Petitioner filed a Motion and Affidavit for a Speedy Trial requesting that the matter be tried within 120 days, which was granted. R. Doc. 7-1, pp. 241-242.  Finding a new date for trial with the existing jury may have impeded the trial court's ability to provide the Petitioner with the speedy trial, he requested.

[91] *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000).

[92] 28 U.S.C. § 2253(c)(2).

13

adequate to deserve encouragement to proceed further."[93] Reasonable jurists could disagree with resolution of the merits of Petitioner's Double Jeopardy claim, particularly whether the trial court's declaration of a mistrial on October 17, 2018 was a "manifest necessity." Accordingly, a certificate of appealability should be granted if Petitioner seeks to pursue an appeal.

## **RECOMMENDATION**

**IT IS RECOMMENDED** that the Petition for Writ of Habeas Corpus,[94] filed by Lerone Lewis, be **DENIED** and **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER RECOMMENDED** that a certificate of appealability be **GRANTED**, if Petitioner seeks to pursue an appeal.

## **ORDER**

The Motion to Amend,[95] filed by Petitioner Lerone Lewis, is **GRANTED**.

The Motion for Expedited Consideration Pursuant to 28 U.S.C. § 1657, filed by Petitioner Lerone Lewis, is **DENIED AS MOOT**.[96]

Signed in Baton Rouge, Louisiana, on November 18, 2022.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

---

[93] *Pippin v. Dretke*, 434 F.3d 782, 787 (5th Cir. 2005), quoting *Miller-El v. Cockrell*, 537 U.S. 322, 327 2003).
[94] R. Doc. 1.
[95] R. Doc. 19.
[96] R. Doc. 20.